# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GORDON HOUSE,

       Petitioner,

vs.                                                      No. CIV  02-0178 MV/ACT

ERASMO BRAVO, Warden

       Respondent,

ROBERT PERRY, New Mexico Secretary of Corrections,

       Additional Respondent,

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER COMES BEFORE THE COURT** on a Petition for a Writ of habeas corpus pursuant to 28 U.S.C. §2254 filed by Petitioner, Gordon House. (Doc. No. 1).  Petitioner seeks to vacate the judgment and sentence entered in CR No. 93-1693 in the Second Judicial District, Bernalillo County, New Mexico. The Respondents filed an Answer denying the allegations of the Petition, together with exhibits and a Motion to Dismiss. (Doc. Nos. 7 and 9). The Court requested further briefing on the merits of the Petition and the parties filed the requested pleadings. (Doc. Nos. 29, 41, 47 and 50).  The Court ordered those portions of the Record Proper cited by the parties in their briefs and filed them as Doc. No. 55.

Having reviewed the Petition, the exhibits, the pleadings and the portions of the Record

Proper filed in this case, the Court recommends that the Petition for the Writ be DENIED ON THE MERITS and the Motion to Dismiss be GRANTED.

Petitioner originally raised thirteen constitutional grounds in his Petition on which he based his challenges to his convictions and sentence.  In his Memorandum of Law in Support of his Application for a Writ of Habeas Corpus, Petitioner narrowed his arguments to seven claims:

1) Petitioner's Fourteenth Amendment rights were violated when the State took deliberate action, over Petitioner's objections, to obtain a venue transfer that deprived the Petitioner of any practical possibility that members of his race would be in the venire from which the petit jury would be selected.

2) Petitioner's Sixth and Fourteenth Amendment rights were violated when the State court trial judge presumed that the venire panel of Taos County held such fixed opinions that a fair and impartial jury could not be seated.

3) Petitioner's Sixth and Fourteenth Amendment rights were violated when the State court trial judge granted a venue change to Doña Ana County despite uncontroverted evidence that the citizens of that county bore a higher incidence of pre-formed opinions of the guilt of the Petitioner than the citizens of Taos County.

4) Petitioner's Sixth and Fourteenth Amendment rights were violated when the New Mexico Supreme Court applied a harmless error analysis to a venue transfer arising from intentional state action.

5) Petitioner's Fourteenth Amendment right to due process was violated when the trial court, on remand, vacated his convictions on the reckless-driving counts as opposed to the DWI-related driving counts.  In support of this claim, Petitioner argues that New Mexico's vehicular

homicide statute, NMSA §§66-8-101 (1978), is ambiguous and mandates application of the rule of lenity.

6) Petitioner's Fourteenth Amendment right to equal protection was violated when the two-year enhancement for DWI-related vehicular homicide was applied in this case to Petitioner's previous DWI misdemeanor conviction.

7) Petitioner's Fourteenth Amendment right to due process was violated when the trial judge refused to recuse himself and the New Mexico Court of Appeals refused to review the trial judge's decision *de novo* on appeal.

## BACKGROUND AND PROCEEDINGS BELOW

This case arises from a Christmas Eve 1992 two vehicle accident.  Petitioner Gordon House drove his vehicle the wrong way onto Interstate I-40 driving east in the west-bound lane. He collided with another vehicle killing a mother and her three children and grievously injuring the husband/stepfather who was driving.

Officers on the scene concluded that in addition to his reckless driving, Petitioner had been drinking that evening such that it impaired his ability to operate a motor vehicle.  They arrested him and charged him with one count of driving while intoxicated (DWI), four counts of DWI-related vehicular homicide, four counts of reckless-driving related vehicular homicide, one count of DWI-related great bodily injury and one count of reckless-driving related great bodily injury with a motor vehicle.  Originally the Petitioner was charged with four counts of depraved-mind murder.  Those counts were dismissed upon a motion by the Petitioner.

The accident and the resulting consequences were widely publicized and received

extensive media coverage.[1]   The media coverage was so extensive that both the Petitioner and the State were concerned that the Petitioner could not receive a fair trial in Bernalillo County where the accident occurred.  Petitioner moved for a change of venue; the State did not oppose the motion.  The first trial judge, Judge Allen, granted the motion, transferring the venue to Taos County.

The first jury trial was held in June, 1994.  The jury convicted Petitioner on one count of driving while intoxicated (DWI) but was unable to reach a verdict on the remaining counts of vehicular homicide and great bodily injury.  The jury vote was 9-3 in favor of conviction on the remaining counts and a mistrial was declared.

A second judge, Judge Blackhurst, was assigned to the case.  The prosecution moved to transfer venue out of Taos County but the newly assigned judge denied the motion.  In November, 1994, Judge Blackhurst presided over the second jury trial in Taos County.   The trial again ended in with a hung jury, 9-3 in favor of conviction and again, a mistrial was declared.  Judge Blackhurst recused himself because of his pending retirement and the case was assigned to Judge Blackmer in December, 1994.

Petitioner moved to dismiss the remaining counts; Judge Blackmer denied the motion.  The judge entered a gag Order for all parties because of the extensive media publicity and the

---

[1]The New Mexico Supreme Court reviewed the publicity in its opinion in *State v. House*, 1999-NMSC-014, 127 N.M. 151,157 -159, 978 P.2d 967, 973-975 (1999) and listed many of the articles and broadcasts in the endnotes.  "The accident and all its consequences became one of the most widely publicized cases in New Mexico history."  *Id.* at 157, 973.  The race of the Petitioner, Navajo, the race of the victims, white, and the ages of the three girls killed, five, seven and nine, as well as the Christmas Eve timing of the accident all contributed to the extensive media coverage, the emotional reactions and the public outrage.  The public outcry included demands for tougher DWI laws as well as allegations of racism and concern that Petitioner was being aggressively prosecuted because he was Native American.

public statements being made by the involved attorneys.  The Order, upon being brought to the New Mexico Supreme Court on a Petition for an Extraordinary Writ, was vacated.  *Twohig v. Blackmer*, 1996-NMSC-023, 121 N.M. 746, 918 P.2d 332 (1996).

The prosecution again moved for a change of venue which Petitioner opposed.  Judge Blackmer held an evidentiary hearing, granted the motion and issued an Order changing Venue for Trial. (R.P. 709) The judge concluded that a fair trial could be held in Doña Ana County and transferred venue to that county.

Petitioner's third jury trial in May, 1995, resulted in convictions on four counts of DWI-related vehicular homicide, four counts of reckless-driving related vehicular homicide, one count of DWI-related great bodily injury and one count of reckless-driving related great bodily injury with a motor vehicle.  The trial judge entered Judgment on July 24, 1995, and sentenced Petitioner to twenty-five years with three years suspended.

Petitioner filed a direct appeal with the New Mexico Court of Appeals.  While the appeal was pending, *State v. Landgraf*, 1996-NMCA-24, 121 N.M. 445, 913 P.2d 252 (Ct. App. 1996), *cert. denied*, 121 N.M. 375, P.2d  (1996), was decided.  The New Mexico Court of Appeals held in *State v. Landgraf* that a criminal defendant could not be convicted of more than one crime of vehicular homicide for each victim.  All parties agreed that *State v. Landgraf* applied to the present appeal but disagreed as to its exact impact.

The New Mexico Court of Appeals, in a 2-1 decision, reversed Petitioner's convictions which had resulted from the jury trial held in Doña Ana County.  A new trial was ordered to be held in Taos County.  *State v. House*, 1998-NMSC-108, 124 N.M. 564, 953 P.2d 737 (Ct. App. 1997).  Both parties petitioned for certiorari to the New Mexico Supreme Court.  The Court

5

granted the State's petition for review.

The New Mexico Supreme Court reversed the decision of the Court of Appeals. *State v. House*, 1999-NMSC-014, 127 N.M. 151, 978 P.2d 967 (1999). Petitioner applied for certiorari to the Supreme Court of the United States but the application was denied on October 4, 1999. *House v. New Mexico*, 528 U.S. 894 (1999).

On remand, the district court vacated Petitioner's convictions on the alternative reckless-driving vehicular homicide counts and the alternative reckless-driving great bodily injury with a motor vehicle in accordance with *State v. Landgraf*, *supra*. (Exhibit P, Answer to Writ)  The district court judge sentenced the Petitioner to twelve years - four consecutive three year sentences on each of the vehicular homicide counts - and to a three year consecutive sentence on the DWI-related great bodily injury.  The district court judge then enhanced each of the five three-year sentences by two years because of Petitioner's previous DWI misdemeanor conviction in 1987, resulting in an enhancement of ten additional consecutive years.  After imposing the total sentence of twenty-five years, the district court judge suspended three years, placed Petitioner on supervised probation for three years following his release from custody and imposed two years of parole.  Petitioner is currently serving his sentence in a state incarceration facility pursuant to the Judgement and Sentence entered in CR No. 93-1693 in the Second Judicial District, Bernalillo County, New Mexico.  Petitioner appealed the outcome of the post-remand sentencing proceedings to the New Mexico Court of Appeals which upheld the sentence in *State v. House*, 2001-NMCA-011, 130 N.M. 418, 25 P. 3d 257 (Ct. App. 2001), *cert. denied* No. 26,771 (3/8/01).  Certiorari was denied by the New Mexico Supreme Court on March 8, 2001.  The Petitioner timely filed this Application for a Writ of Habeas Corpus within the one year time frame

which began to run upon exhaustion of his state remedies.

### STANDARD OF REVIEW OF PETITIONER'S WRIT OF HABEAS CORPUS

Petitioner's petition for a writ of habeas corpus was filed on February 13, 2002, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the petition is governed by the provisions of the AEDPA. *Williams v. Taylor*, 529 U.S. 362 (2000).

All but one of the Petitioner's claims have been adjudicated on the merits by the state courts during the course of Petitioner's appeals to the state courts. With respect to those claims adjudicated on the merits, § 2254 of the AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

The writ may only be granted if this Court finds that the state court arrived at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law; decided the case differently than the Supreme Court of the United States has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the petitioner's case. *Van Woudenberg v. Gibson*, 211 F. 3d 560, 566 (10th Cir. 2000)(citing *Williams v. Taylor*, 529 U.S. 362 (2000)). Petitioner is arguing in his claims that the state court

decisions which affirmed his convictions and sentence were either decisions that were contrary to clearly established federal law or were decisions that applied clearly established federal law unreasonably under the circumstances.  Petitioner has not argued that his convictions were based on an unreasonable determination of the facts.

Clearly established Federal law are the holdings, as opposed to dicta, of United States Supreme Court decisions as of the time of the state court decisions in question.  *Williams v. Taylor, supra* at 412.  These are the governing legal principles set forth by the Supreme Court of the United States.  *Id.,* at 413.  "A state court decision is 'contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Lockyer v. Andrade*, __ U.S. __, 123 S. Ct. 1166, 1173 (2003), quoting *Williams v. Taylor*, *supra*, at 405-406.

An unreasonable application of clearly established federal law occurs when the state court correctly identified the governing legal principle from United States Supreme Court decisions but unreasonably applied that principle to the facts of the Petitioner's case.  *Williams*, *supra*, at 413.  An unreasonable application is more than an incorrect or erroneous application.  The state court's application of clearly established federal law must be objectively unreasonable.  *Id.*, at 409.

DISCUSSION

CLAIM I

Petitioner's first claim is that the State, through its opposed but ultimately successful motion to change venue from Taos County, deprived Petitioner of his Fourteenth Amendment right to be tried by a jury selected from a venire that included members of his own race. Petitioner, an enrolled member of the Navajo tribe, is Native American.  Bernalillo County, the county in which the accident occurred, has a population of 3.7% Native Americans.  Venue was originally transferred to Taos County, which has a population of 6.5% Native Americans.  Doña Ana County, where Petitioner was tried for the third time and ultimately convicted of four counts of DWI-related vehicular homicide and one count of DWI-related great bodily injury, has a population of 0.8% Native Americans.

Petitioner argues that *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny, including *Powers v. Ohio*, 499 U.S. 400 (1991), and *Holland v. Illinois*, 493 U.S. 474 (1990), hold that the State may not purposefully exclude persons of a particular race in the selection of a criminal trial jury and that this prohibition against purposeful, discriminatory state action extends to the selection of the venue and ultimately the venire.  *Batson v. Kentucky* and *Powers v. Ohio* were petit jury cases decides on Fourteenth Amendment grounds.  *Holland v. Illinois*, also a petit jury case, was decided on Sixth Amendment grounds.

In *Batson v. Kentucky, supra,* and *Powers v. Ohio*, *supra*, the criminal defendants argued that the prosecution violated their right to be tried by a jury chosen in accordance with the equal rights guarantee of the Fourteenth Amendment when the prosecuting attorney used peremptory strikes to remove all persons of a particular race from the petit jury.  The United States Supreme

Court held in *Batson v. Kentucky, supra*, that the Fourteenth Amendment prohibits the prosecution from challenging potential jurors solely because of their race and that the defendant, who was black like those jurors excluded from the jury, had the right to object to the prosecution's use of peremptory strikes to remove members of his race from the petit jury.  The Court created a three step inquiry by which the defendant could prove that the State's use of peremptory strikes was based on race and thus violated the defendant's Fourteenth Amendment right to a jury selected by non-discriminatory criteria.

In  *Powers v. Ohio, supra,* the Court held that the defendant had the right to object to the prosecution's use of race-based peremptory strikes of jurors from the petit jury even if the defendant is not of the same race as those jurors sought to be excluded.  "Although a defendant has no right to a petit jury composed in whole or in part of person of the defendant's own race, he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria."  *Powers v. Ohio, supra*, at 404, quoting in part and citing *Strauder v. West Virginia,* 100 U.S. 303, 305 (1880).

Plaintiff argues that these holdings should be read as also prohibiting intentional State action - moving for a change of venue over Petitioner's vehement objections - which would result in Petitioner being tried in a venue in which his race, for all practical purposes, is excluded. Petitioner argues that the State's motion for a change of venue, which resulted in a change of venue to Doña Ana County, is no different than the State's use of peremptory challenges to strike all Native Americans from the petit jury.  By having the third trial moved to Doña Ana County, the Petitioner argues, the prosecution in effect received unlimited peremptory strikes against

Native Americans since there were virtually no Native Americans in the venire pool.[2]

Petitioner's argument must fail.  The clearly established federal law does not extend the ruling of *Batson v. Kentucky, supra*, and its progeny to the State's motion for a change of venue, even when that motion ultimately results in a venue transfer to a county which contains virtually no members of Petitioner's race.  The United States Supreme Court was given the opportunity to extend the holding of *Batson v. Kentucky* to the State's use of a change of venue statute in *Mallett v. Missouri*, *cert. denied*, 494 U.S. 1009 (1990) (Justice Marshall dissenting). Even though the issue was squarely presented to the Court, seven of the nine Justices declined to review the case.  Only Justices Marshall and Blackmun were willing to consider the argument that Mallett's constitutional rights had been violated by the State transfer of venue.  The facts and the claim presented in *Mallett v. Missouri* are strikingly identical to the facts and claim presented by the Petitioner.

Mallett, an Afro-American, was charged with, and eventually convicted in a Missouri

---

[2]Petitioner's concern that Native Americans be available in the venire pool had a cultural aspect to it as well as a racial aspect.  Petitioner presented a defense argument in all three of his trials that a severe familial hemiplegic migraine was the proximate cause of his driving the wrong way on the freeway and the resulting accident.  He did not mention the migraine to medical personnel on the night of the accident.  Petitioner presented evidence that a person raised in a traditional Navajo community, as was the Petitioner, would not volunteer information and would suppress symptoms of pain when encountering a situation in which he is threatened or hurt and surrounded by people whom he did not know.  This reaction was argued by the Petitioner to be a cultural practice which would be understood by those raised in a Native American culture or those familiar with Native American culture but could well have been misinterpreted by people not familiar with Native American culture.  Petitioner also presented evidence in a subsequent hearing that persons with Native American blood but not raised in a Native American culture would not necessarily understand this type of reaction. (Tr. Vol. 54, Motion to Supplement Record). Petitioner also presented evidence that a Native American who often relied on traditional Native American healing practices, as did Petitioner, would not necessarily mention a migraine to medical personnel at the scene of the accident or later in a hospital.

state court, of murdering a white policeman.  Prior to his trial, Petitioner moved for a change of

venue due to extensive pre-trial publicity.  Both the prosecution and the defense offered

suggestions for another venue. Defense counsel specifically voiced concerns that Afro-Americans

reside in whatever venue was chosen.  Venue was moved to a county, over defendant's

objections,  in which no Afro-Americans resided effectively preventing any Afro-Americans from

serving on the jury.  Mallett appealed his conviction on both Fourteenth and Sixth Amendment

grounds.  The Missouri Supreme Court upheld his conviction and Mallett applied for a writ of

certiorari to the United States Supreme Court.

Certiorari was denied with Justices Marshall and Blackmun dissenting.  Justice Marshall

argued that "[j]ust as state prosecutors may not use peremptory challenges to exclude members of

the defendant's race from the jury, *Batson v. Kentucky*, 476 U.S. 79 (1986), state trial courts may

not transfer venue of the trial to accomplish the same result by another means." *Mallett v.*

*Missouri, supra*, at 1009.  Although it was a compelling argument to at least two of the Justices,

the Supreme Court declined to consider extending the holding of *Batson* to the State's use of

venue transfers.[3]

Petitioner House recognized that the holding of *Batson* had not been extended to apply to

the State's use of venue transfers.  In his own application for a writ of certiorari to the Supreme

Court of the United States, Petitioner's primary argument was that the "Application of *Batson v.*

*Kentucky* to the Question of Whether a State Trial Court may Transfer a Criminal Case from a

---

[3]Mallett presented the same Fourteenth Amendment argument in his federal habeas corpus
petition.  The Eighth Circuit affirmed the denial of his petition. "We are unable to find any
authority to support a conclusion that Mallett's Fourteenth Amendment rights were violated by a
change of venue to a county, without any, or at least a very small number of, black residents from
which to draw a jury venire." *Mallett v. Bowersox*, 160 F.3d 456, 459 (8th Cir. 1998).

Venue with a Significant Population of the Defendant's Race to a Venue with Practically No Members of the Defendant's Race is a Significant Question of First Impression that Should be Resolved by This Court." (Answer, Exhibit M, Petition to the Supreme Court of the United States). Presented with virtually the same fact pattern as in *Mallett v. Missouri*, supra, the United States Supreme Court again declined to review the case, letting Petitioner's state conviction stand.[4]

Petitioner has not met his burden on his first claim. Clearly established federal law does not hold that Petitioner's Fourteenth Amendment rights were violated when the State obtained a transfer of venue to a county in which Petitioner's race is not as well represented as in the venue in which the crime occurred or in the venue in which Petitioner was originally tried. The Petitioner has not established that the adjudication of his first claim resulted in a state court decision that was contrary to established federal law. Petitioner's application for a writ of habeas corpus on his first claim is denied.

---

[4]Petitioner also argues that by transferring venue out of Taos County, the rights of Taos County Native Americans to serve on Petitioner's jury have been violated. This argument is without merit for two reasons. First, the crime did not occur in Taos County but in Bernalillo County. Taos County residents, Native American or otherwise, had no right to serve on the jury of this case more than any other New Mexican resident. Secondly, the residents of Taos County, Native American or otherwise, already had two opportunities to serve on a jury trial of this case. There is no clearly established federal law which allows them unlimited chances to serve on a jury concerning a crime which occurred elsewhere in the state.

CLAIM II

In his second claim, Petitioner argues that his Sixth and Fourteenth Amendment rights were violated when the trial judge presumed that a fair and impartial jury could not be seated in Taos County after the two mistrials.  Presented with this claim, the New Mexico Court of Appeals originally agreed with the Petitioner and overturned his convictions resulting from the Doña Ana County trial.  But on appeal, the New Mexico Supreme Court ultimately rejected Petitioner's argument and reinstated the convictions. *State v. House*, 1998-NMCA-018, 124 N.M. 564, 953 P.2d 737 (Ct. App. 1997), *rev'd by State v. House*, 1999-NMSC-014, 127 N.M. 151, 978 P.2d 967(1999).

In the state appellate courts,  Petitioner argued that the trial judge could not make the determination that a fair and impartial jury could not be seated in Taos County after the two mistrials until the trial judge found, through the use of *voir dire* during an attempt to select a third jury, that actual prejudice existed such that an impartial jury could not be seated.  The Petitioner argued, as he argues now, that his Sixth and Fourteenth Amendment rights were violated when the trial judge made a factual finding of a <u>presumption</u> of prejudice in Taos County, rather than a finding of <u>actual</u> prejudice.

 The Court of Appeals, in a 2-1 decision, held that objective evidence was necessary before the trial judge could make a determination that a fair trial in Taos County was improbable. *State v. House*, 1998-NMSC-018, 124 N.M. 564, 953 P.2d 737 (Armijo, J. dissenting).  The Court of Appeals concluded that in all but the most unusual case the trial judge must first attempt to seat a jury before concluding from the answers to *voir dire* that the potential jurors held such fixed opinions and had been so affected by the pretrial publicity that selecting an impartial jury

14

was improbable.  The New Mexico Supreme Court disagreed.

The New Mexico Supreme Court reversed the Court of Appeals in *State v. House*, 1999 NMSC-014, 127 N.M. 151, 978 P.2d  967 (1999).  Pursuant to NMSA § 38-3-6 (1998 Rep. Pamp.), the prosecution had moved for a change of venue after the second mistrial. The statute allows either party to move for a second change of venue.  The decision rests within the discretion of the trial judge.  The New Mexico Supreme Court held that the trial judge had not abused his discretion when he found, based on the evidence presented, that it was improbable that a fair and impartial third jury trial could be held in Taos County.

The trial judge's decision was reached after an extensive evidentiary hearing which included testimony regarding the publicity in Taos County about the accident, the two mistrials and the effect the publicity had on potential jurors in that county.  (R.P. 709).  The Supreme Court reviewed the evidence presented in the record and concluded there was substantial evidence in the record to support the trial judge's findings.  "Widespread inflammatory publicity saturated Taos County close to the time of the trials; the television, radio and newspaper publicity was highly emotional; the comments by the parties, relatives, and the attorneys in this case further affected public sentiment; the risk of prejudice was increased by the comparatively small population of Taos; jurors in the second trial did not disclose bias during *voir dire*; and there was a strong likelihood that many potential jurors would enter the third trial with strong predilections toward one party or the other".  *State v. House*, supra at 990, 174.  Having found the trial judge's decision to grant the State's motion to change venue was supported by substantial evidence, the Supreme Court held that the judge did not abuse his discretion in granting the State's motion for a change of venue.

15

The Petitioner is unable to point to any clearly established federal law which states that a trial judge must find that actual prejudice exists, rather than presumed prejudice, such that a fair trial is improbable before the judge may grant a motion for a change of venue.  The United States Supreme Court has not addressed this issue but has recognized in a series of change of venue cases that a trial venue can be so saturated with prejudicial publicity that a criminal defendant is unable to receive a fair trial.  *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333 (1966), *Rideau v. Louisiana*, 373 U.S. 723 (1963).

In *Mu'Min v. Virginia*, 500 U.S. 415 (1991), an extensive pretrial publicity case, the Supreme Court was asked to review whether the criminal defendant had the constitutional right to have particular *voir dire* questions asked of potential jurors to ascertain whether they could be impartial in light of the pretrial publicity.  Concluding that the Constitution did not require that these particular *voir dire* questions be asked of the jurors, the Court went on to write,

> [O]ur own cases have stressed the wide discretion granted to the trial court in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias.  Particularly with respect to pretrial publicity, we think this primary reliance on the judgment of the trial court makes good sense.

*Id.,* at 427,  (emphasis added).

Federal law does not require that the trial judge must conduct *voir dire* of the next panel of potential jurors after two mistrials and conclude, from the answers to the *voir dire*, that actual prejudice exists before granting a motion for a change of venue.  By contrast, federal case law gives the trial judge great latitude in determining when the pretrial publicity has become so pervasive and prejudicial that a fair and impartial trial is improbable.  *See, e.g. Mu'Min v. Virginia*, *supra*; *Patton v. Yount*, 467 U.S. 1025 (1984);  *Dobbert v. Florid*a, 432 U.S. 282

(1977); *Murphy v. Florida*, 421 U.S. 794 (1975).

In the present case, the trial judge made a finding of fact after conducting an evidentiary hearing:

> [T]he totality of evidence and facts and circumstances before this Court in the record and Court history of this case through at least February 3, 1995 ... show a strong probability that if a THIRD trial of this case were to be held in Taos County, a fair trial (and a fair and impartial jury) cannot be obtained because of the existence in Taos County of ... public excitement in Taos County in regard to this case AND to the issues/questions involved herein; and/or ... local prejudice in Taos County in regard to this case AND to the issues/questions involved herein.

(R.P. 714-715). In a federal habeas corpus case, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

The Petitioner argues that the evidence on which the trial judge relied was unscientific, irrelevant, incomplete and biased, giving examples in his brief to support these descriptions. Petitioner's argument goes to the weight the trial judge should have given the evidence. The examples and conclusions he draws are not the clear and convincing evidence required by the AEDPA to rebut the presumption of correctness of a determination of a factual issue. The trial judge found that public excitement and local prejudice in Taos County after the second mistrial made conducting a fair trial with a fair and impartial jury highly improbable. The New Mexico Supreme Court reviewed the evidence and concluded there was substantial evidence in the record to support the trial judge's finding. The Petitioner has failed to meet his burden of rebutting the presumption of the correctness of this factual finding by clear and convincing evidence. Petitioner's application for a writ of habeas corpus on his second claim is denied.

17

CLAIM THREE

Petitioner argues that his Sixth and Fourteenth Amendment rights were violated when the State court trial judge granted a venue change to Doña Ana County despite uncontroverted evidence that the citizens of that county bore a higher incidence of pre-formed opinions of the guilt of the Petitioner than the citizens of Taos County.[5]  Petitioner asserts that the State violated his Sixth and Fourteenth Amendment rights by purposefully choosing a venue in which the polling expert, Mr. Sanderoff, testified that of people who actually had an opinion about the guilt or innocence of Petitioner, 67% believed he was guilty or probably guilty.   Mr. Sanderoff testified that in Taos County, by contrast, of people who actually held an opinion about the guilt or innocence of Petitioner, around 62% believed he was guilty or probably guilty. (Tr. Vol. 16 at 75-77).

Petitioner appears to be arguing that the trial judge's decision, affirmed by the New Mexico Supreme Court,  to change the venue of his third trial to Doña Ana County in which a large percentage of people held an opinion of his guilt resulted in a decision that was an unreasonable application of clearly established federal law.  The Sixth Amendment guarantees a federal criminal defendant the right to a public trial by an impartial jury.  The Fourteenth Amendment extends that right to state criminal prosecutions.  *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).  An impartial jury is one whose members do not hold fixed opinions of the guilt or innocence of the accused and whose members can judge the defendant impartially on the evidence presented at the trial.  *See, Patton v. Yount*, 467 U.S. 1025 (1984).   The clearly

_____

[5]Petitioner also asserted a claim that the number of Native Americans residing in Doña Ana County and thus eligible to be in the venire pool was considerably less than either Taos County or Bernalillo County.  That argument has been addressed under Claim 1.

established federal law is that the jury actually chosen to try the Petitioner must be able to judge him impartially. *Irvin v. Dowd*, 366 U.S. 717 (1961).

Mr. Sanderoff's testimony was not that a higher percentage of people in Doña Ana County had a fixed opinion of the guilt or innocence of the defendant than in Taos County. His testimony was that 36% of the people surveyed in Doña Ana County were willing to give an opinion on the guilt or innocence of the Petitioner while 60% of the people surveyed in Taos County were willing to give an opinion on guilt or innocence. (Tr. Vol. 16 at 43). The statistics referred by to by the Petitioner are somewhat misleading. What Petitioner fails to point out is the 67% in Dona Ana County and the 62% in Taos County who believe Petitioner was guilty or probably guilty was not of the entire polling sample in each county. Rather it was the relative percentages of those people in each county who held an opinion about Petitioner's guilt.

If someone was willing to give an opinion, Mr. Sanderoff testified, they were asked "In your opinion do you believe that Gordon House is definitely guilty, probably guilty, probably not guilty or definitely not guilty?". (Tr. Vol. 16 at 42-43). Fifty-five percent of the people in Taos County asked this question answered definitely guilty or probably guilty. Five percent of the people in Taos County asked this question answered not guilty or definitely not guilty. (Tr. Vol. 16 at 42-43 *but compare with* Tr. Vol. 16 at 75-76). While only 36% of the surveyed people in Doña Ana County had an opinion, of those who did have an opinion, a slightly higher percentage of those held an opinion of Petitioner's guilt. (Tr. Vol. 16 at 75-76). In absolute numbers, of the three hundred people surveyed in each county, less people surveyed by Research & Polling, Inc., Mr. Sanderoff's firm, held an opinion of definitely guilty or probably guilty in Doña Ana County than in Taos County because less people held an opinion in Doña Ana County. That evidence

19

was consistent with other statistical evidence presented by Mr. Sanderoff.  For example, 88% of

the adults surveyed in Taos County could recall who Gordon House was or knew something

about the event while only 54% of the adults surveyed in Doña Ana County could recall the same

information.  (Tr. Vol. 16 at 32).

The Sixth and Fourteenth Amendment do not require that the community not remember

the event that led to the trial of the Petitioner.  The United States Constitution requires instead

that the jurors eventually selected for the trial of a criminal defendant not hold such fixed opinions

that they cannot judge impartially the guilt of the defendant.  *Patton v. Yount*, *supra*.  The

Petitioner has presented no evidence that the jurors who were chosen to sit at his Doña Ana

County trial held fixed opinions of his guilt or were in any way prejudiced against him.  Nor did he

present such evidence to the state appellate courts.

> House has not offered any evidence of actual, presumed, or probable prejudice – nor even
> the appearance of prejudice – during the third trial in Doña Ana County. ...  He never
> suggests that the people of that community, as reflected by the opinions of prospective
> jurors in voir dire, had such fixed opinions about this case that the jurors were incapable of
> laying aside their preconceived notions and basing their judgment exclusively on the
> evidence presented at trial.

*State v. House*, 1999-NMSC-014, 127 N.M. 151, 180-181, 978 P.2d 967, 996-997 (1999).

Without any evidence of prejudice or of jurors who held a fixed opinion, the fact that a

certain percentage of potential jurors in Doña Ana County stated they held an opinion on the guilt

or innocence of the Petitioner is irrelevant.  The jury was chosen for Petitioner's third trial after

extensive *voir dire*.  The Petitioner did not object to the composition of the jury and offered no

evidence either before the state appellate courts or this Court to show that the jurors were

prejudiced.  *Id.*, at 182, 998.  Petitioner has not established that either his third trial or the state

court appellate decision which affirmed his convictions applied clearly established federal law in an unreasonable manner.  Petitioner's application for a writ of habeas corpus on his third claim is denied.


CLAIM FOUR

Petitioner argues that his Sixth and Fourteenth Amendment rights were violated when the New Mexico Supreme Court applied a harmless error analysis to the venue transfer to Doña Ana County.  Petitioner argues that clearly established federal law states that certain rights of a criminal defendant are so fundamental that once the defendant has established that the right has been violated, the defendant need not show that any prejudice resulted from the violation.  For example, the rights to a public trial or a trial before are an impartial judge are so fundamentally protected by the Constitution of the United States that the defendant need only show that the right was violated to obtain post-conviction relief.  The defendant need not, in addition, show that actual harm or prejudice resulted from the violation.  *Waller v. Georgia,* 467 U.S. 39, 49-50 and n.9 (1984) (right to a public trial)); *Turney v. Ohio*, 273 U.S. 510, 535 (1927) (trial before an impartial judge).

The United States Supreme Court has never held that a criminal defendant has a fundamental right to maintain his trial in a venue which is not the venue where the crime allegedly occurred.  In the present case, the Petitioner moved for the first transfer of venue because of extensive pretrial publicity and the likelihood of prejudice.  The State did not contest the transfer of venue.  It is the second transfer of venue to which Petitioner objects so strenuously and now claims violated one of his fundamental constitutional rights.  Petitioner further argues that the

State's choice of Doña Ana County as the new venue with its population of less than 1% Native Americans violated one of his fundamental constitutional rights and should not be subject to a harmless error analysis.

There is no clearly established federal law which holds, as Petitioner contends, that a second transfer of venue over a criminal defendant's objection, violates a fundamental right of the defendant.  A fundamental error is a "structural defect affecting the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279 , 300 (1991).  The United States Supreme Court has carefully delineated which errors are structural defects and thus not subject to a harmless error analysis.  For example, the total deprivation of the right to counsel at trial in *Gideon v. Wainwright*, 372 U.S. 335 (1963), was one such error.  However, a second transfer of venue over a criminal defendant's objections, even to a county in which virtually no residents of the defendant's race reside, has never been defined as a structural defect requiring a fundamental error analysis.  *Cf.*, *Mallett v. Missouri*, *cert. denied*, 494 U.S. 1009 (1990) (Justice Marshall dissenting)

In *Estes v. State of Texas*, 381 U.S. 532 (1965), a case in which the defendant's motion to transfer venue because of potential prejudice was denied, the Court set aside a conviction despite the absence of a showing of prejudice.  "It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused." *Id.* at 542. However, the Court noted that at times the State's action involved such a probability that prejudice will result that no showing of actual prejudice is necessary.  *Accord, Sheppard v. Maxwell*, 384 U.S. 333, 352-353 (1966).  These cases involved defendants who, although the objects of extensive and prejudicial publicity, had been <u>denied</u> their motions for a transfer of

22

venue away from the venue in which the crime allegedly occurred. *Accord, Rideau v. Louisiana*, 373 U.S. 723 (1963).

Petitioner is unable to show that the State's action in transferring venue to Doña Ana County involved such a probability that prejudice will result that a fundamental error analysis is required. Of course, Petitioner is arguing that the fact that Doña Ana County contained virtually no Native Americans involved just that sort of probability.   However, there is no clearly established federal law which requires that the county to which venue is eventually transferred contain residents whose racial composition closely mirrors that of the county in which the crime being tried was allegedly committed.  The Supreme Court has firmly held that the Sixth Amendment requires only that Petitioner is entitled to a jury composed of a fair cross section of the venire pool, not a representative jury. *Holland v. Illinois*, 493 U.S. 474 (1990).

The United States Supreme Court has never held that a fact pattern presented such as this one, in which the criminal defendant opposed a second transfer of venue, sought by the prosecution because of extensive and what the prosecution contended was prejudicial publicity, coupled with two mistrials, should trigger a fundamental error analysis.  Petitioner is unable to demonstrate that clearly established federal law mandates that the second transfer of venue, granted over his strenuous objections, is subject to a fundamental error analysis.  Petitioner's application for a writ of habeas corpus on his fourth claim is denied.

CLAIM FIVE

Petitioner argues that his Fourteenth Amendment right to due process was violated when the trial court, on remand, vacated his convictions on the reckless-driving counts as opposed to

23

the DWI-related driving counts.  In support of this claim, Petitioner argues that New Mexico's vehicular homicide statute, NMSA §§66-8-101 (1978), is ambiguous and mandates application of the rule of lenity.  These arguments were presented to the New Mexico Court of Appeals after Petitioner's re-sentencing.  The New Mexico Court of Appeals rejected the Petitioner's arguments and affirmed the re-sentencing in *State v. House*, 2001-NMCA-011,130 N.M. 418, 25 P.3d 257 (2001).

The rule of lenity is applied only when a statute is so ambiguous that "reasonable doubt persists about a statute's intended scope even <u>after</u> resort to 'the language and structure, legislative history and motivating policies' of the statute."  *Moskal v. United States*, 498 U.S. 103, 108 (1990) , quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1971)(emphasis in original). Petitioner's argument is that the New Mexico vehicular manslaughter statute, NMSA §66-8-101, which provides alternative means of obtaining a conviction for vehicular manslaughter - through DWI or through reckless driving - does not express an intent that one means of committing the crime is more serious than the other.  Therefore, he argues that the statute is ambiguous and that the rule of lenity should apply.

The New Mexico Court of Appeals rejected this argument finding that "the Legislature has made clear its intent to impose a greater penalty for DWI-related violations of the statute, when committed by a recidivist-impaired driver, than for reckless-driving-related violations ...  We conclude that the Legislature viewed DWI-related violations as the graver or more serious offense."  *State v. House, supra*, at 262, 423.  The state appellate court found that the statute was not ambiguous because the enhanced penalties for recidivist DWI-related violations and the motivating policies of the statute made it clear which means of violating the statute the

Legislature considered the more serious offense. Applying the general rule of double jeopardy that when a defendant has been convicted of the same offense twice, the lesser offense should be vacated, the state appellate court affirmed the trial court's vacation of the reckless-driving vehicular homicide and reckless-driving great bodily injury counts. *See, State v. Santillanes*, 1000-NMCA-017, 128 N.M. 752, 998 P.2d 1203 (2000).

When a state court interprets its state law, the state court's determination is binding on this Court in a federal habeas corpus review. *Chapman v. LeMaster*, 302 F.3d 1189 (10th Cir. 2002). Federal habeas corpus review is limited to claims that the state court's interpretation of its own law is contrary to clearly established federal law or involved an unreasonable application of clearly established federal law. Petitioner argues that the New Mexico vehicular homicide statute is so ambiguous that the clearly established federal rule of lenity must apply. Petitioner is unable however to present any federal case law or state legislative history in support of his argument.

By contrast, the New Mexico Court of Appeals did not find any ambiguity, finding instead that the Legislature made it clear that it viewed DWI-related vehicular homicide as the more serious offense. This Court finds the state appellate court's interpretation and analysis of the vehicular homicide statute reasonable and supported by the statutory language. The New Mexico Court of Appeals' statutory interpretation of the New Mexico vehicular homicide statute is not contrary to nor does it involve an unreasonable application of clearly established federal law. Therefore, its interpretation of its statute is binding on this Court. Since the statute is not ambiguous, the rule of lenity does not apply.

The principles of double jeopardy, as elucidated in *State v. Landgraf*, 1996-NMCA-024, 121 N.M. 445, 913 P.2d 252 (1996), mandated that one set of Petitioner's convictions be

25

vacated, either the DWI-related convictions or the reckless-driving related convictions.  The New Mexico Court of Appeals court found that the trial court properly vacated the lesser offenses. The vacation of the reckless-driving related convictions and the retention of the DWI-related convictions were not contrary to nor did they involve an unreasonable application of clearly established federal law. Petitioner's application for a writ of habeas corpus on his fifth claim is denied.[6]

CLAIM SIX[7]

Petitioner argues in his Sixth Claim that his Fourteenth Amendment right to equal protection was violated when the two-year enhancement for DWI-related vehicular homicide was applied in this case to his previous DWI misdemeanor conviction.  He argues that the sentence enhancement scheme under the New Mexico Vehicular Homicide Act, NMSA §66-8-101(D) violates the equal protection clause of the Fourteenth Amendment because it treats previously convicted DWI misdemeanants more harshly than previously convicted felons.  This argument

---

[6] Petitioner also argues that the New Mexico Court of Appeals erred when it held that Petitioner waived its constitutional doubt claim.  This claim - that courts should avoid a construction of a statute that raises grave doubts as to its constitutionality - was deemed waived by the state appellate court.  The Court wrote that the Petitioner invoked the doctrine but failed to apply it to its case "with even the most remote specificity."  *State v. House*, 2001-NMCA-011, 130 N.M. 418, 428, 25 P.3d 257, 267 (2001).  The New Mexico Rule of Appellate Procedure 12-213 requires that each issue raised be presented in the Brief in Chief with the appellant's contentions and citations. In accordance with its Rule of Appellate Procedure, the New Mexico Court of Appeals properly deemed the constitutional doubt claim waived.  This Court will not consider issues raised in the petition that have been defaulted in state court on an independent and adequate procedural ground.  *Thomas v. Gibson*, 218 F.3d 1213 (10th Cir. 2000).

[7]This claim was labeled as Claim 7, skipping Claim 6 but for simplicity, this Court has numbered the claims consecutively.

was also presented to the New Mexico Court of Appeals in Petitioner's post-sentence appeal. *State v. House*, 2001-NMCA-011, 130 N.M. 418, 25 P.3d 257 (2001).

Petitioner argues that it is irrational to enhance the sentences of those now convicted of DWI-related vehicular homicide who were previously convicted of a DWI misdemeanor by two years when a previously convicted felon who subsequently is convicted of another felony faces only a one year sentence enhancement.   NMSA §66-8-10(D), the New Mexico vehicular homicide statute,  provides for a two year sentence enhancement for each prior DWI conviction. In New Mexico the first three convictions of driving while intoxicated (DWI) are misdemeanors. NMSA §66-8-102 (A)-(F).   By contrast, the general recidivist statute, NMSA §31-18-17(B), provides for a sentence enhancement of one year if a previously convicted felon is convicted of a second felony.  On the third felony conviction, the sentence enhancement is four years.

Under a traditional equal protection analysis, the classifications created by legislation are sustained if the classifications bear a rational relationship to a legitimate governmental interest. *Romer v. Evans*, 517 U.S. 620 (1996).  The New Mexico Court of Appeals found two legitimate governmental interests that were addressed by the vehicular homicide enhanced sentencing statute.  First, the New Mexico vehicular homicide enhancement section, NMSA §66-8-101(D), only applies to those convicted of seriously injuring or killing others while the general recidivist statute, NMSA §31-18-17, applies in general to recidivist felons, many, if not most, of whom are not guilty of violent crimes. The Court of Appeals found the Legislature's decision to enhance the sentences of  those convicted of violent crimes more severely than those convicted of non-violent crimes  was rationally related to a legitimate governmental interest.

Secondly, the Court of Appeals surmised that it was rational for the Legislature to reason

that those previously convicted of DWI had not "learned the lesson that such behavior was socially deviant." *State v. House*, 2001-NMCA-011, 130 N.M. 418, 427, 25 P.3d 257, 266 (2001). The state court concluded that it was rational for the Legislature to substantially increase the punishment for recidivist-impaired drivers, who, because they failed to stop their behavior were convicted of DWI-related vehicular homicide or DWI-related great bodily injury. The classification was rationally related to a legitimate governmental interest.

This Court finds the analysis of the New Mexico Court of Appeals persuasive. The classification of those previously convicted of DWI who subsequently are convicted of DWI-related vehicular homicide or great bodily injury bears at least two rational relationships to legitimate governmental interests. Therefore, the classification of those such as Petitioner who was previously convicted of a DWI misdemeanor but whose sentence on a DWI-related vehicular homicide or great bodily injury conviction was enhanced more severely than a subsequently convicted felon under a general felony statute, does not violate the Fourteenth Amendment.

Petitioner also argues that the fact that he was previously convicted of a  DWI misdemeanor should have been proven beyond a reasonable doubt before that previous DWI conviction could be used to enhance his sentences for DWI-related vehicular homicide and great bodily injury. Clearly established federal law requires that if a  previous conviction is to be used for sentencing enhancement purposes, the fact of the previous conviction need only be established by a preponderance of the evidence. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The sentencing judge, Judge Blackmer, made findings of fact on the record after hearing evidence that Petitioner had entered a guilty plea to a DWI misdemeanor charge in 1987. (TR. Vol 59, TR. 51-66). Judge Blackmer stated on the record, "The Court finds and (sic) this prior DWI guilty plea

28

in 1987 is a valid – legally and constitutionally valid guilty plea and conviction for driving while intoxicated, a misdemeanor, first offense, occurring December 9th, 1987." (Tr. Vol. 59, TR 52). In addition, the State introduced certified copies of the Judgment and Sentence from the 1987 DWI misdemeanor conviction. (Exhibit E, Tr. Vol. 59).  "A determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).  The State established by a preponderance of the evidence through testimony and exhibits that Petitioner's guilty plea to his first DWI offense in December, 1987, was a constitutionally valid and legal guilty plea and therefore resulted in a valid DWI misdemeanor conviction.  The Petitioner has failed to present this Court with any evidence to rebut these findings.  Therefore, Petitioner's argument is without merit.

The classification of recidivist DWI misdemeanants subsequently convicted of DWI-related vehicular homicide or great bodily injury for sentencing enhancement is not contrary to nor does it involve an unreasonable application of clearly established federal law.   Petitioner's 1987 conviction for misdemeanor DWI was established by a preponderance of the evidence, a standard which is not contrary to clearly established federal law. Petitioner's application for a writ of habeas corpus on his sixth claim is denied.


SEVENTH CLAIM

Petitioner's argues that his Fourteenth Amendment right to due process was violated when the trial judge refused to recuse himself at re-sentencing and when the New Mexico Court of Appeals refused to review the trial judge's decision *de novo* on appeal.  After the mandate had

been issued by the New Mexico Supreme Court and the case returned to the trial court for re-sentencing, Petitioner requested that the trial judge, Judge Blackmer, recuse himself.  Judge Blackmer declined and issued a letter ruling.  Petitioner filed a motion to disqualify or reassign to a new judge and asked for hearing before the Chief District Court Judge or the presiding Criminal Judge.  (R.P. 1546).  The motion was denied and Judge Blackmer informed the parties that the neither the Chief District Court Judge nor the presiding Criminal Judge would hold a hearing. (R.P. 1785).  The Petitioner filed a Petition for a Writ of Mandamus with the New Mexico Supreme Court.  (Exhibit FF, Answer).

The Petition was denied.  (Exhibit GG, Answer).  The sentencing hearing was held and the matter of recusal was presented to the New Mexico Court of Appeals in Petitioner's direct appeal after his re-sentencing.  The New Mexico Court of Appeals held that Petitioner had waived any appellate challenge regarding his motion to recuse Judge Blackmer.  *State v. House*, 2001-NMCA-011, 130 N.M. 418, 427-428, 25 P.3d 257, 266-267 (2001).  The state appellate court did not address the claim on the merits, finding the matter waived as insufficiently briefed under its Rules of Appellate Procedure, Rule 12-213 NMRA.

This Court may not consider issues or claims raised in a petition for a writ of habeas corpus that have been defaulted in state court on an independent and adequate procedural ground, unless the Petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice."  *Thomas v. Gibson*, 218 F. 3d 1213, 1221 (10th Cir. 2000) quoting *English v. Cody*, 146 F. 3d 1257, 1259 (10th Cir. 1998).

The New Mexico Court of Appeals held that Petitioner had abandoned his claims that both the refusal of the sentencing judge to recuse himself and the procedure available to review

that denial deprived Petitioner of due process.  The state court held that in his Brief in Chief the

Petitioner failed to make a substantive argument, failed to present the relevant facts to the court

and failed to note that the motion had already been reviewed by the district court and by the New

Mexico Supreme Court.  *State v. House*, 2001-NMCA-011, 130 N.M. 418, 427-428, 25 P.3d

257, 266-267 (2001).  Citing to New Mexico Rules of Appellate Procedure 12-213, the New

Mexico Court of Appeals found the matter was waived because it was insufficiently briefed.

Petitioner argues that the New Mexico Court of Appeals incorrectly applied its rule of

procedure concerning the briefing of issues in the Brief in Chief.  He argues that the claim was

incorporated by reference in his brief, was adequately presented and should not have been deemed

waived. His argument does not go to the adequacy or  independence of the state procedural rule.

*See, e.g,. Maes v. Thomas*, 46 F. 3d 979 (10th Cir. 1995) (holding that this New Mexico

procedural rule is both adequate and independent). Nor does he argue that even though he may

have abandoned the claim, this Court should now consider it on the basis of cause and prejudice

or to prevent a miscarriage of justice.  *See, e.g., Watson v. State of New Mexico*, 45 F. 3d 385

(10th Cir. 1995).

The New Mexico Court of Appeals' ruling that the issue had been inadequately briefed

and therefore waived is a factual finding - the Petitioner's Brief in Chief did not contain specific

arguments, did not contain a statement of the facts, and omitted the background of the motion.

"A determination of a factual issue made by a State court shall be presumed to be correct.  The

applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. §2254(e)(1).  This Court has reviewed the Brief in Chief

(Exhibit B to Exhibit X, Answer) and the Petitioner's arguments and cases cited in support

31

thereof.  This Court does not find that the Petitioner has rebutted the presumption of correctness by clear and convincing evidence.   The finding of the New Mexico Court of Appeals that the claim was inadequately briefed and therefore abandoned is supported by the record and is presumed to be correct.  Applying this factual determination to the New Mexico Rules of Appellate Procedure 12-213, the Court of Appeals correctly determined that the issue of whether the motion to recuse sentencing judge should have been granted  and which court(s) should have reviewed the denial of the motion was waived.  Petitioner's seventh claim may not be reviewed on the merits by this Court because it was procedurally defaulted in the state appellate court below. Petitioner's application for a writ of habeas corpus on his seventh claim is denied.

<u>RECOMMENDED DISPOSITION</u>

Petitioner has failed to establish that the issues adjudicated on the merits by the state courts resulted in decisions that were contrary to or involved an unreasonable application of clearly established federal law.  Petitioner has also failed to establish by clear and convincing evidence that the determination by the New Mexico Court of Appeals that he waived his seventh claim was incorrect.  Petitioner has not met his burden on his petition for a writ of habeas corpus. IT IS HEREBY RECOMMENDED that Petitioner §2254 Petition for the Writ of Habeas Corpus be DENIED ON THE MERITS and the Respondent's Motion to Dismiss be GRANTED.

<u>NOTIFICATION</u>

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written

objections with the Clerk of the United States District Court, 333 Lomas Blvd. NW,

Albuquerque, NM 87102, pursuant to 28 U.S.C. §636 (b)(1).  A party must file any objections

within the ten day period allowed if that party wants to have appellate review of the proposed

findings and recommendations.  If no objections are filed, no appellate review will be allowed.


ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE