IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GORDON HOUSE,

      Petitioner,

vs.                                                   No. CV 02-0178 MV/ACT

ERASMO BRAVO,

      Respondent.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Petitioner's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition **[Doc. No. 58]**, recommending that Petitioner's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 **[Doc. No. 1]** be dismissed. Upon conducting a *de novo* review of the record, the Court finds that the Magistrate's Proposed Findings and Recommended Disposition will be adopted in part and modified in part; and that the petition for *habeas corpus* under 28 U.S.C. § 2254 will be **DENIED**. As it is denying Petitioner's writ of habeas corpus, the Court finds no need to grant Respondent's Motion to Dismiss. The Motion to Dismiss will be **DENIED**.

## BACKGROUND

In 1992, Gordon House ("Petitioner") was involved in a deadly automobile accident on Interstate 40 in Bernalillo County. The state charged Petitioner with vehicular homicide, great bodily injury by vehicle, driving while intoxicated (DWI) (second offense), and reckless driving in connection with the head-on collision. Because of the extensive publicity surrounding the incident, New Mexico District Judge Frank Allen transferred venue to Taos County at Petitioner's

request. The first jury convicted Petitioner on the DWI charge, but deadlocked 9-3 on the other charges. The state filed a motion for change of venue, which was denied. At retrial, the Taos County jury again deadlocked 9-3 and the judge declared a mistrial. After the second trial, the state again moved for a change of venue, which was opposed by Petitioner. Judge James Blackmer held a hearing on the venue change, eventually granting the state's motion and transferring the trial to Doña Ana County. He ultimately concluded that "local excitement and prejudice" generated by the two mistrials and the extensive publicity surrounding the case meant neither side could not get a fair trial.

    Jury selection was conducted in Doña Ana County. The attorneys on both sides conducted exhaustive voir dire. Petitioner did not object to the jury that eventually was seated. The Doña Ana County jury found Petitioner guilty on all remaining counts. Judge Blackmer sentenced Petitioner to twenty-five years, with three years suspended. Petitioner filed for appellate review in the New Mexico Court of Appeals. The appeals court found that the district court's decision to change venue from Taos County to Doña Ana County was an abuse of discretion and thus did not reach Petitioner's constitutional challenges to the district court's selection of Doña Ana County as a new venue. The New Mexico Supreme Court reversed the Court of Appeals, holding that the state could obtain a second change of venue without proving "with clear and convincing evidence" that a fair trial in Taos County was a practical impossibility; the trial court in Doña Ana County was not required to conduct voir dire before Petitioner's third trial to determine whether prejudice caused by pretrial publicity required a change of venue; extensive pretrial publicity supported a change of venue; Petitioner was not prejudiced by change in venue; the state offered a race-neutral explanation for seeking a venue change; and Petitioner's

right to a jury drawn from a fair cross section of the community was not relevant to the state's motion for venue transfer. *See State v. House*, 127 N.M. 151, 978 P.2d 967 (N.M. 1999).

While Petitioner's direct appeal was pending in the Court of Appeals, *State v. Landgraf*, 121 N.M. 445, 913 P.2d 252 (N.M. Ct. App. 1996) was decided. The *Landgraf* court held that a criminal defendant could not be convicted of more than one charge of vehicular homicide for each victim. *Id*. at 453-55, 913 P.2d at 260-62. On sentencing remand after the New Mexico Supreme Court had affirmed Petitioner's convictions, the district court vacated Petitioner's convictions on the two alternative vehicular homicide theories as required by *Landgraf*. Petitioner again was sentenced to twenty-five years in prison, with three years suspended. Petitioner appealed the sentence, which was upheld by the Court of Appeals in *State v. House*, 130 N.M. 418, 25 P.3d 257 (N.M. Ct. App. 2001). The New Mexico Supreme Court denied certiorari on the sentencing issue on March 8, 2001. After exhausting state review, Petitioner filed for federal habeas corpus relief on February 13, 2004.

## STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEPDA"), enacted in 1996, changed federal habeas corpus review in several important ways relevant to the instant case. AEDPA added to the federal habeas corpus statute 28 U.S.C. § 2254(d), which provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>	(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In *Terry Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified the meaning of § 2254(d). "A state-court decision will certainly be 'contrary to' our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id.* at 405-06. An "unreasonable application of federal law" denotes some greater degree of deviation from the proper application than a merely "incorrect or erroneous" application. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002) (a habeas petitioner has not met his burden under AEDPA when he convinces a federal court that, in its independent judgment, the state court applied clearly established federal law incorrectly; rather, the petitioner must show that the state applied the principle to the facts of the case in an unreasonable manner). "Unreasonableness" is gauged by an objective standard. *Andrade*, 538 U.S. at 75. Furthermore, the Supreme Court has explained that "[a]voiding these pitfalls does not require citation of our cases--indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

Under the AEDPA, the only federal law a district court may consider on habeas review is the clearly established federal law as determined by the decisions, not dicta, of the Supreme Court, when the state court rendered its decision. *Williams*, 529 U.S. at 412; *Bell*, 535 U.S. at

696. This does not mean that the Supreme Court must have decided the very case that a lower state court has before it as long as it correctly identifies the governing principles from Supreme Court precedent and does not apply them unreasonably to the facts of the case before it. *Williams*, 529 U.S. at 407-08. Furthermore, a federal district court sitting on habeas review is confined to alleged errors of federal law, not state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

On habeas review, pure factual questions are scrutinized under 28 U.S.C. § 2254(e)(1). That provision instructs the court to presume that state court factual findings are correct unless rebutted by clear and convincing evidence. It is the petitioner's burden to overcome this presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

## DISCUSSION

Petitioner has proffered several constitutional arguments relating to Judge Blackmer's venue change from Taos County to Doña Ana County. The Court will deal with Claims One and Two below to address Petitioner's specific objections. The Court will adopt the findings and disposition of the Magistrate as to the remaining Claims.

**I.     Petitioner's Venue Claims**

    A.     Claim One:  The venue transfer to Doña Ana County violated *Batson v. Kentucky*.

Petitioner claims that the Fourteenth Amendment's prohibition on deliberate, discriminatory state action that is applicable at the petit jury selection stage, *see Batson v. Kentucky*, 476 U.S. 79 (1986), extends to deliberate, discriminatory state action to obtain a venue transfer. Petitioner further claims that the New Mexico Supreme Court's misapplied *Batson* in its

analysis of the alleged discriminatory nature of the venue change.  The Magistrate determined that Petitioner's *Batson* claim was not cognizable on habeas because, "[t]he clearly established federal law does not extend the ruling of *Batson v. Kentucky*...and its progeny to the State's motion for a change of venue, even when that motion ultimately results in a venue transfer to a county which contains virtually no members of Petitioner's race."  Magistrate's Findings and Proposed Disposition ("MFPD") at 11.  The Magistrate is correct.  In fact, when faced with this very question in *Mallett v. Missouri*, 494 U.S. 1009 (1990) (Marshall, J., dissenting), the Supreme Court declined to grant certiorari.[1]  While this does not signify that the Supreme Court rejected the merits of the claim, it does signify that the Court explicitly chose not to answer the question.  It is also worth noting that the Eighth Circuit rejected the very claim Petitioner raises:

> Mallett argues the Supreme Court's decision in *Batson v. Kentucky* prohibits, as a violation of the Equal Protection Clause of the Fourteenth Amendment, the transfer of a black defendant's criminal case to a county with no black residents. We reject such a reading and hold that *Batson* is inapplicable to the present case.
>
> In *Batson*, the petitioner claimed that the state prosecutor challenged potential jurors solely on account of their race and thereby violated the Fourteenth Amendment. The Supreme Court held the Equal Protection Clause forbids a prosecutor to use his peremptory challenges to exclude veniremen based solely on their race. Here, in contrast, Mallett challenges a change of venue occurring well before the process of choosing a jury had begun. The trial court's decision to transfer venue on defense counsel's motion has nothing to do with prosecutorial discrimination in striking veniremen based on their race and was not addressed by the Court in *Batson*.

*Mallett v. Bowersox*, 160 F.3d 456, 460 (8th Cir. 1998) (internal citations omitted), *cert. denied*,

---

[1] Petitioner argues that "the error in the Magistrate's approach is that *Batson* and not *Mallet* is controlling law[.]"  Petitioner's Objections at 5.  Neither are controlling Supreme Court law on the issue as described herein.

494 U.S. 1009 (1990).

Petitioner argues in his Objections that the Proposed Disposition overlooked the fact that "[t]he New Mexico Supreme Court correctly determined that the United States Supreme Court cases have firmly established that *Batson* applies to a venue transfer, underpinned as it was here by purposeful state conduct intended to distort the venire and petit jury's racial composition." Petitioner's Objections at 6-7.  First, the New Mexico Supreme Court in its decision never determined that United States Supreme Court opinions have "firmly" established that *Batson* applies to a venue transfer. Just the opposite, the court stated that "[t]here is no generally accepted test for evaluating discriminatory intent in the selection of a venue." *House*, 127 N.M. at 177, 978 P.2d at 993.  What Petitioner misunderstands in his objections is that the New Mexico Supreme Court's conclusion that a modified *Batson* test *could* apply to an alleged discriminatory venue transfer does not make *Batson* "clearly established federal law" on the issue.  Unlike federal district courts considering habeas writs, lower state courts are not required to apply only "clearly established federal law" on direct appeal, rather they apply Supreme Court decisions employing their own interpretation and analysis.  Because *Batson* is not the clearly established law to apply to Petitioner's claim, the New Mexico Supreme Court could not, by definition, run afoul of the provisions of 28 U.S.C. § 2254(d).

Petitioner also argues that the New Mexico Supreme Court misapplied *Batson* to its analysis, falling "below the requirements set forth in *Miller-El* [*v. Cockrell*, 537 U.S. 322 (2003)]." *See* Petitioner's Objections at 9. As an initial matter, this Court cannot consider any new rules, principles, or requirements set forth in *Miller-El* on a *Batson* analysis in the instant case, because the Supreme Court decided *Miller-El* long after the New Mexico Supreme Court

decided Petitioner's direct appeal. *See Teague v. Lane*, 489 U.S. 288, 295-96 (1989) (new rules should not be applied retroactively in reviewing habeas petitions). Second, while this Court finds that *Batson* is not the controlling law on discriminatory venue change, even if *Batson* did apply, the Petitioner has not shown that the New Mexico Supreme Court applied *Batson* in "an objectively unreasonable manner."

In *Batson*, the Supreme Court outlined a three-step process for determining whether a prosecutor used preemptory challenges to remove prospective jurors solely based on race. First, the defendant must make a prima facie of racial discrimination based on the prosecutor's use of preemptory challenges. *Batson*, 476 U.S. at 97. Once the prima facie showing has been made, the burden shifts to the prosecutor to bring forth race-neutral explanations for challenging jurors of color. *Id.* Finally, the trial court weighs the evidence and determines whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98. Even as the New Mexico Supreme Court conceded that the trial court did not undertake a *Batson* analysis, it applied a modified version of the *Batson* test to the venue decision, finding: 1) Petitioner had made out a prima facie case of racial discrimination "with his cultural arguments and his evidence that, after he twice had a hung jury in community that had a significant Native American population, the State advocated the move to a venue with few Native Americans"; 2) the state presented numerous race-neutral explanations for the change to Doña Ana County, including the fact that there was a larger population that theoretically had been less exposed to publicity than Taos County; and 3) the trial court's exercise of discretion in moving the trial to Doña Ana County necessarily signified that it did not believe that the state's motivations were discriminatory. *House*, 127 N.M. at 178-79, 978 P.2d at 994-95.

While it is somewhat problematic to assume that the trial court's decision to move the trial to Doña Ana County "necessarily" meant that it did not believe that the state's motivations were discriminatory, this Court cannot say that such an interpretation of the facts was unreasonable. Similarly, this Court cannot say that, on the whole, the New Mexico Supreme Court's "modified" *Batson* analysis was unreasonable. The court went through an analysis of all of the steps, considered evidence that would bear in favor of the state and Petitioner, and reached a conclusion as to the trial court's state of mind. For these reasons, this Court finds that Petitioner's Objections on Claim One are without merit.

      B.      <u>Claim Two: The venue transfer violated Petitioner's Sixth and Fourteenth Amendment rights when the trial judge presumed that a fair and impartial jury could not be empaneled in Taos County.</u>

Petitioner argues that the trial court violated his constitutional rights when it presumed that a fair and impartial jury could not be seated in Taos County after two mistrials without finding actual prejudice in the venire by conducting voir dire. The New Mexico Court of Appeals agreed with Petitioner, concluding that in all but the most unusual case the trial judge must first attempt to seat a jury before deciding, based on answers to voir dire, that the potential jurors held such fixed opinions and had been so affected by the pretrial publicity that selecting an impartial jury was improbable. *See New Mexico v. House*, 124 N.M. 564, 568-72, 953 P.2d 737, 741-45 (N.M. Ct. App. 1998) ("[W]e do not believe the record supports the district court's decision to take the drastic step of changing venue without first attempting to select a new jury from Taos County.") New Mexico's High Court disagreed, finding that the decision to grant a second change of venue for either the defendant or the state is to be left to the discretion of the trial court and the trial court's decision must be upheld if supported by substantial evidence in the record.

*See House*, 127 N.M. at 162, 165, 978 P.2d at 978, 981. Furthermore, the New Mexico Supreme Court determined that the trial court's decision to transfer venue was supported by substantial evidence in the record. *Id.* at 170-75, 978 P.2d at 986-91. Similarly, in his Proposed Disposition, the Magistrate found:

> The Petitioner is unable to point to any clearly established federal law which states that a trial judge must find that actual prejudice exists before the judge may grant a motion for change of venue. The United States Supreme Court has not addressed this issue but has recognized in a series of venue transfer cases that a trial venue can be so saturated with prejudicial publicity that a criminal defendant is unable to receive a fair trial.

MPFD at 16.

### 1. Did the New Mexico Supreme Court err under § 2254(d)(1) when it determined that voir dire was not required before the district court could transfer venue?

Petitioner makes several objections to the Proposed Disposition. First, he argues that the Magistrate misread *Mu'Min v. Virginia*, 500 U.S. 415 (1991), which "makes clear that the Supreme Court *has never presumed community wide prejudice in the absence of voir dire*." Petitioner's Objections at 13 (emphasis in original). This is incorrect. Petitioner's confusion stems from a misunderstanding of the procedural posture of the Supreme Court cases he cites.

The Supreme Court's change of venue jurisprudence has developed around claims of defendants, who, after being denied a change of venue motion by the trial court, alleged that their due process rights had been violated.[2] The factual record in these cases included pre-trial

---

[2] To this Court's knowledge, the Supreme Court has not squarely decided the constitutionality of a change of venue claim initiated by the government in a criminal case. A likely reason for this is that the state does not have a constitutional right to a fair and impartial jury as does a defendant. Most states are given a statutory right to change venue. Thus, such a case would not be heard by the Supreme Court. The propriety of such statutes normally are

publicity, as well as voir dire, precisely because the defendant's motion for a change of venue had been denied and the case had not been transferred before trial. *See, e.g., Irvin v. Dowd*, 366 U.S. 717, 725-28 (1961) (extraordinary pretrial publicity in connection with a capital trial had so tainted the jury pool where voir dire revealed that two-thirds jurors actually seated had formed an opinion that the defendant was guilty, that the defendant was entitled as a matter of federal constitutional law to a change of venue to another county). The Court's analysis of the voir dire in venue cases, however, does not signify that "clearly established law" as established by the Supreme Court is that voir dire must always occur before a change of venue motion may be granted by the trial court. In fact, as to change of venue motions and voir dire generally, the Supreme Court has been clear that a trial judge has discretion in such an area precisely because it is a factual matter that the trial court is best suited to decide upon hearing evidence from both sides. *See Mu'Min*, 500 U.S. at 427.

> [O]ur own cases have stressed the wide discretion granted to the trial court in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. Particularly with respect to pretrial publicity, we think this primary reliance on the judgment of the trial court makes good sense. The judge of that court sits in the locale where the publicity is said to have had its effect and brings to his evaluation of any such claim his own perception of the depth and extent of news stories that might influence a juror.

*See id*.

Petitioner further argues in his Objections that "the constitutional standard is that even if a juror were exposed to significant and negative pretrial publicity and remembered it perfectly, it 'would not be sufficient to disqualify a juror' unless the juror irrevocably believed the Defendant

---

decided by state supreme courts, which are the arbiters of their own statutes and laws.

guilty." Petitioner's Objections at 13. This is an important principle as applied to *when* prejudice will be found during voir dire; however, it does not bear on Petitioner's ultimate contention – that voir dire is necessary before prejudice can be presumed. According to the Supreme Court, prejudice will be presumed when the record demonstrates that the community where the trial was held was significantly saturated with prejudicial and inflammatory media publicity about the crime. *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Irvin v. Dowd*, 366 U.S. 717 (1961). The Court finds that the New Mexico Supreme Court did not interpret this principle unreasonably when it held that Judge Blackmer's decision to change venue to Doña Ana County before conducting voir dire, but after holding an evidentiary hearing, was not an abuse of discretion.

Another problem with Petitioner's objections and arguments is that the New Mexico Supreme Court based its decision on the venue issue in part on its own interpretation of New Mexico's statutes and law. *See House*, 127 N.M. at 161, 978 P.2d at 977 (determining that New Mexico's venue change statute and the state case law regarding the statute allows either side to change venue because "both sides are susceptible to prejudice and both sides are equally entitled to a fair trial under the venue statute"). The court also found, with regard to the district court's ultimate change of venue order, that pretrial publicity was not the only element that factored into the decision, nor should it be. *See id.* at 166-67, 168, 978 P.2d at 982-93, 984. "While voir dire is essential in establishing actual prejudice, it is but one method by which the trial court may determine that, because of pretrial publicity, a fair trial is improbable in a particular venue." *Id.* at 168, 978 P.2d at 984. When other types of evidence "support a presumption that pretrial publicity has rendered a fair trial improbable, then the court, in its discretion, can change venue without conducting voir dire." *Id.* (*citing Rideau v. Louisiana*, 373 U.S. 723, 727 (1963)).

Finally, the court found:

> In New Mexico there is no requirement in our constitution, statutes, or case law that a venue change should be supported by proof of actual prejudice through voir dire, even when the change is opposed by the defendant. As with all aspects of a venue change, the choice of waiting until after voir dire before granting a motion to change venue rests with the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion.

*Id.* Because a federal court is not permitted to reevaluate a state court's interpretation of its own laws on habeas review, *see Estelle*, 502 U.S. at 67-68, this Court cannot say that the New Mexico Supreme Court's decision was in error when it determined that the state's venue change statute and a long line of cases supported its ultimate conclusion that the trial judge did not abuse his discretion in moving Petitioner's third trial.

### 2. Did the trial judge make an unreasonable determination of the facts in light of the evidence presented in the state court proceedings?

A change of venue decision is a mixed question of law and fact and thus the provisions of 28 U.S.C. § 2254(d)(2) apply. Petitioner argues that the Proposed Disposition overlooked his argument that the trial judge made an unreasonable determination of the facts when he granted the state's change of venue motion. Petitioner's Objections at 14. The Proposed Disposition addressed this briefly:

> The Petitioner argues that the evidence on which the trial judge relied was unscientific, irrelevant, incomplete and biased, giving examples in his brief to support these descriptions. Petitioner's argument goes to the weight the trial judge should have given the evidence.

MFPD at 17.

While this Court is troubled by Judge Blackmer's decision to change venue, over the

vehement objection of Petitioner, to a County with a negligible population of Native Americans, after reviewing the evidence on the change of venue, this Court cannot say that the trial court's decision was an unreasonable determination of the facts based on the evidence presented. In his order changing venue from Taos County, Judge Blackmer noted several pieces of evidence that formed the basis for his decision:

1. "The comments of the District Attorney, both Deputy District Attorneys who tried the case, Defendant's counsel, Defendant and his family were published in television and print media throughout Taos County--adding to the public opinions and knowledge and information about this case in that small-population city and County." Record Proper ("RP") at 0711

2. Defendant's counsel comment, in June 1994, that: "Publicity has now permeated Taos pretty completely...Both sides will have to rethink venue." *Id.*

3. Comments by several Taos citizens criticizing the conduct of the State. *Id.* at 0711-13.

4. The fact that the two prior "high-profile trials" were "widely publicized in at least television and print media, and strong and openly-expressed opinions by the hard-working jurors and by the Taos county public after each trial have created public excitement and local prejudice." *Id.* at 0714.

5. The sympathies of several prior jurors were not disclosed during voir dire and may have affected their deliberations. *Id.*

6. Since the second trial judge had denied the State's change of venue, there were additional "facts" and "circumstances" indicating that a fair trial cannot be obtained in Taos County, including the fact that the second trial was highly publicized and the fact that the second trial ended in a hung jury. *Id.*

These facts are not unreasonable bases for Judge Blackmer's decision and the Court does not find them to be as such. For these reasons, the Court finds that Petitioner's Objections on Claim Two are without merit.

## CONCLUSION

**IT IS THEREFORE ORDERED** as follows:

1. The Court adopts the Magistrate's findings and conclusions of law as to Claims Three through Seven.

2. The Court amends and adds to the Magistrate's findings and conclusions of law as to Claims One and Two as set forth in this Memorandum Opinion and Order.

3. Because the Court will deny Petitioner's writ of habeas corpus, it is unnecessary to grant Respondent's Motion to Dismiss. Therefore, the Motion to Dismiss is **DENIED**.

4. Petitioner's writ of habeas corpus is **DENIED**.

Dated this 31st day of March, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Petitioner:
William J. Friedman

Attorney for Respondent:
Steven S. Suttle